G.B. Forefront L.P. v. Forefront Management Group, et al., come forward if they would please. I hope I'm saying your name right, sir. Mr. Nusiforo? Good morning, Mr. Chairman. Yes, that's correct. Okay, you may proceed. Good morning, panel. Christopher Nusiforo on behalf of the appellant. Your Honor, we're here today in appeal of a decision by the lower court which overturned and vacated, essentially, effectively, invalidating a settlement agreement between parties. We're well familiar with the background, Mr. Nusiforo, so I think we can jump right into it. It's fair to say, right, that if this is treated as a traditional trust and we were to look at this the way you suggested, which is something that AmeriCorps changes the legal front on, that we would be looking only at the citizenship of the trustee. Is that right? That's correct, Your Honor. Now, it's a pretty complicated setup that the Wieners came up with, and again, I hope I'm saying the name right. I'm not mispronouncing your name. That's correct, Your Honor. But is it right that if we look at the beneficiary's citizenship as well as Mr. Wieners, the trustee's citizenship, as we penetrate down a couple layers, that that puts us into New Jersey as well as to Pennsylvania, and that's why the district court thought you would lose? That's correct, Your Honor. That's my understanding. Okay. Do we know enough about these so-called testamentary trusts? Can they sue in their own name? What powers do they have? Really, what type of trusts are they? Sure. Do we really have an adequate record on that? Your Honor, there is a trust document that's in the appendix, and I'll point you to A-1. Okay. A-1 for one of five trusts. That's correct, Your Honor. My understanding that those are the trust documents for all of the trusts. But how do we know that? Yeah. How do we know that without that in the record? You know, that is a fundamental issue, Your Honor, and to the panel, I'll submit this. This was a very heavy litigated case down below. Although, shockingly, there were no depositions, there was only document discovery, this issue didn't come up until five years after the case was litigated. This was never an issue in the case. So these issues were never fully vetted. And what I can offer this panel is that the Pennsylvania statute that governs these types of trusts, and I understand, Your Honor's uncertainty about what type of trust this exactly is, but even on the face of the trust document alone, for what the purpose of the trust is, assuming that they're all the same, that is not a business trust and should not be treated as a business trust. Well, that's where the rabbit just went into the hat, right, when you said assuming they're all the same, right? Because we don't know that they're all the same. But setting aside that challenge, which appears to be a gap in the record, if they are all the same, what is the distinguishing feature that makes this the kind of trust, the kind of traditional trust that is different from the REIT issue in Americold or other business trusts? Your Honor, in Americold, they were dealing with business trusts set up for business purposes as if they were more akin to legal business entities rather than traditional trusts where people are leaving assets to their family or whomever they choose. Here we have Mr. Weiner literally setting up trusts for his five grandchildren. In fact, and I'll submit to this to the panel because I don't know that this is in the record other than it was in the record below given the short time frame. These are minor children. They can make decisions on their own. The trust cannot make decisions on their own. The Americold and Emerald cases apply the carbon test because we're dealing with trusts that act like businesses. We're talking about real estate investment trusts. We're talking about property trusts. Here we're talking about trusts that are set up by a grandfather for his minor grandchildren. Is there something in the record that proves the citizenship of FMG? There's nothing in the record that I'm aware of that has any rationale to have the court below specifically rule that FMG is a resident of New Jersey. Excuse me, Your Honor, I meant citizen of New Jersey. Yeah. Whose obligation is it to demonstrate diversity? It would be the plaintiff, Your Honor. Okay. So if there is a gap in the record, who bears the brunt of that? Your Honor, I understand that, but the plaintiff to answer your question directly. Okay. What should we be looking to to try to figure out the citizenship of FMG? I think you should be looking at whether Mr. Wasitowski was a resident of New Jersey by looking at where he was living at the time. Let me set that back, Your Honor. There are two different issues. There's the factual issues and then there's the legal issues. Right. Although that factual issue is important in determining the citizenship of FMG, I think the reply brief does it very well, if I may say so myself. I think it did a very good job of putting the path forward of why, regardless of the underlying facts, which may be in dispute, and if the court were inclined to rule that way, maybe a remand on those limited issues would be something that the court would be willing to do. But the path is the legal path, and when we read AmeriCold together with Emerald, I think the court in this court, the Third Circuit in Emerald, did leave the question open of maybe having a different test for a traditional citizenry trust. Did we do that? I thought we said pretty clearly in Emerald that there's not a basis for treating these things differently, that we looked at it, we researched it, and, quote, our research has not led us to conclude that the type of trust calls for a difference in treatment when determining a trust's citizenship for diversity of citizenship jurisdictional purposes, unquote. That's our statement out of footnote 10 in Emerald Partners, which looks like we said it doesn't matter whether you're a traditional trust or not. You're going to face the same rule as any other unincorporated association. Your Honor, that was correct at the time, and then came AmeriCold. And I think in Emerald, Your Honor, there was a mention of an analysis in a note that there is opportunity when we're treating trust differently. Again, and I'm going to point you to our reply brief, which does give the path, and I can go through it if you'd like, but I don't want to take up time not answering your questions when the analysis is already there. But at the time, the way we read it, Your Honor, and interpret it, is at the time, you're correct, there was no law out there that made that distinction. But I submit to this panel that then came AmeriCold in 2016, and it does leave the opening for that, the way a traditional testimony of trust is handled in terms for diversity. Is it the lack of capacity to sue or be sued that AmeriCold focused on? Correct. And is the reasoning in Raymond LaBier, the Second Circuit decision, that that absence is well-defined a traditional trust such that the citizenship of the trustee alone should be sufficient? Correct, Your Honor, and also Wayne coming out of the D.C. Circuit as well. Now, does that, in your view, present a departure from Emerald Investors? It does. And how so? I wouldn't say departure. I'd say a clarification. I don't say that it's an opposite to Emerald. I'd say they could all be read together because if we look at the different statutes, so let's talk about AmeriCold for a minute. In AmeriCold, we're dealing with a Maryland statute, and the Maryland statute specifically said that the real estate investment trust is essentially like a business entity, could be sued and can sue. Here we're dealing with a Pennsylvania statute, and it's clear that the business trust statute in Pennsylvania requires certain things to be done for it to be a business trust. What we have here is a fiduciary trust, a traditional trust. So you read AmeriCold to say that if there is nothing more than a fiduciary relationship created in the traditional sense of the restatement of Torrance Second, that is in that particular circumstance. That's correct, Your Honor. The trustee is sufficient. That's how you read AmeriCold. Correct, Your Honor, and that's the exact analysis in autopsy brief. Is what Justice Sotomayor said on this particular point dicta to the central holding that the real estate investment trust in Maryland was an unincorporated association where all members had to be accounted for purposes of diversity? Yes, Your Honor, and I think Justice Sotomayor did a great job, and in fact, in the beginning of the opinion, she states that we're looking at this particular trust and this particular statute. I think looking prospectively to the law, I would submit, when we're dealing with these trusts, I think it clarifies the law with respect to subject matter jurisdiction when you're dealing with traditional trusts because counsel argues and does a great job that we're going to make a mishmash of how we're going to deal with subject matter jurisdiction. I think that benefits our position. I think that if we look at it, we're dealing with traditional trusts, which are here. We argue a grandfather setting up a trust for his grandchildren, and then we're talking about unincorporated entities like the real estate investment trust and others that are acting like businesses. They're making decisions. They're operating. Well, if we accept the distinction that you're drawing and accept that the record establishes what you've said, we've already had some questions about whether the record does establish that, given that we've got one trust document and one only. Does that require that we specifically overrule that portion of Emerald Investors that said we're not making distinctions between trusts? I think the law has changed. I think... Well, then let me put it to you this way. Does Americold effectively abrogate that part of Emerald Investors where we said there's not a distinction between business trusts and traditional trusts? I don't think so, Your Honor, and I'll tell you why. I think the rationale behind the specific trust at the time Emerald was adjudicated and decided that before the court were only the business trusts. There was nothing else, and the court even mentioned, as Your Honor alluded to earlier, that there wasn't a law at the time before them that they could even find in their own research. What we're dealing with now is a clarification with Emerald, Americold, and then a clarification here with... If we look at the litany before Americold and its litany, including Emerald, including Cardin, Navarro, and including Judge Mariani set forth, this is different. This is the only case that is dealing with a testamentary trust. I submit that it needs to be treated differently, and I think it will clarify Emerald. It will clarify Americold. If we accept the interpretation of Emerald along the lines of what Judge Jordan read, is Americold sufficient under our internal operating procedures for us to say that we as a panel can overrule Emerald because of instructions we have gotten from the Supreme Court? Judge, that question is something that I think... I'm trying to rationalize in my head how to get to that path. I don't see it as an overruling. I look at it as a clarification of another trust before the court at this time. I think when you read Emerald and Americold together, it has an opening to have a testamentary trust, a traditional trust, treated differently in this situation with respect to subject matter jurisdiction and determining who is determinative of the citizenship of the parties. Do we have to go in bank to overrule Emerald? I don't believe so, Your Honor. Because we can distinguish? Correct. I think it's easily distinguishable. Every case that we have discussed other than the one here today deals with a business trust. All right. Judge, go ahead. If I may. Did you see any lineage as between Navarro and Americold? I understand Navarro talked about the rationale was that it was the individual trustees who, in their own name, that allowed the matter to be found to have diversity. I also understand Justice Scalia and Cardin said we were only talking about the citizenship of the trustees, not the trust, and yet look at the whole thing. Navarro allowed the individual trustees to assume their own names to enforce a harm assortment. Does that lend any support for what Justice Sotomayor wrote in Americold, or are they simply not sufficiently connected to give us any analytical support for whatever it is we decide to do? Yeah, I don't believe they are sufficiently connected, Your Honor. Okay. I don't, and I requested five minutes on rebuttal. I see that I went over time, so I'm willing to, with the Court's permission, adjust that time. All right. Thank you. Thank you. Thanks, Mr. Mussoforo. Mr. Fellner. Good morning. Gary Fellner for the defendants' appellants' appellees. The order below that was entered should be affirmed. Let me start by simply saying that MDO Investors is sound law. How can it be sound law in the light of the Supreme Court's statement that there's a lot of confusion out there? See Emerald Investors. There certainly is a lot of confusion. I would agree with that. And, frankly, I don't think that the Supreme Court's precedent has helped. There is confusion. So whether we like it or not, it is what it is. And the statement from the Supreme Court, unanimous, you know, in a court that's sometimes sharply divided, we've got a unanimous decision from the Supreme Court telling us, it appears, that with the traditional trust where there's just a fiduciary relationship, there is no need to determine its membership as would be true if the trust as an entity were sued. Why isn't that a departure from what we said in Emerald Investors? I don't think it's a departure from what was said in Emerald. I don't think it's a departure from what was said in Navarro. I think what Justice Sotomayor was saying in Emerald is that one has to distinguish between the situation where the trustee is the party that is the real party in interest and is sued or has sued versus when the trust itself is a party. I think that's all that was being stated yet again. And if the Supreme Court in Emerald would have stated, no, we're going to make a separate rule for traditional trust, I think the court would have said that. Your position has to be that the Second Circuit is wrong, that the D.C. Circuit is wrong, that the Fourth Circuit is wrong. All three of those circuits who've looked at Emerald and understood there to be now a distinction between traditional trusts and a business trust, they're all confused. That's the position you're putting forward? I don't know if I would ever use the word wrong. I would submit, Your Honor, that the courts are misreading the language in Emerald. It makes a way to say it, but you're saying they're wrong, right? Because if you follow them, you lose, don't you? I am, Your Honor. I think that the statement in Emerald was meant to reinforce the standing rule when you reconcile Navarro with Emerald, that you look at all the members whenever the trust itself is a party. And I think that the words that were used in the Emerald case could have been stated better. Unfortunately, some of the courts have taken that language and stated, well, maybe what the court was saying is something different, and we're going to make a determination that when you're dealing with a traditional trust, we're going to set up a brand-new rule. Now, as the court said in Gordon, why don't you address the reasoning that we get from these other circuits? Because those three circuits seem to be pretty aligned. Lubier says, while the Supreme Court did not speak directly to these matters in Emerald, it followed its discussion of traditional trust with the observation that state laws now apply the trust label to a variety of unincorporated entities, such as the REIT there at issue, that have little in common with traditional trust. And then it goes on to say, where state law applies the trust label to a separate legal entity that itself can sue or be sued, that trust is subject to the rule that it possesses the citizenship of all its members. In other words, I read that, and I understand the court to be saying, look, from this reasoning, it's clear to us that there is a difference between traditional trust and business trust, and they do need to be treated differently for jurisdictional purposes. Why is that wrong? Historically, Your Honor, there are jurisdictions where when a traditional trust brings a lawsuit, it can only be brought by the trustee. And in that situation, very frequently, it is the trustee who is the real party in interest. That is not the law in Pennsylvania. We've cited a case that stated that when you're dealing with a trust, any trust, it is a separate legal entity. There are other jurisdictions where that may not be true, and perhaps in those jurisdictions, maybe the reasoning of the D.C. Circuit would apply. So it depends on a matter strictly on federal jurisdiction. It will depend upon whether a state law happens to have a feature that creates a separate legal entity as opposed to merely a fiduciary relationship. Well, in Americal, they look to the law of Maryland, and I think under Erie, the court should be looking to the state law. So here, in the Third Circuit, in this case at least, the court should look to Pennsylvania law. But shouldn't we know more about the five so-called testamentary trusts? Your Honor, that is a key point that we raised in our brief, and I agree 100%. The record was never properly developed by the plaintiff. Judge Goldberg stated in his March 15th order that the parties need to come forward and be prepared on the date of the hearing to develop the record. What the plaintiff's counsel did is he said, I'm prepared to stipulate that Mr. Wastowski, who is a member of FMGT, is from New Jersey, and that the beneficiaries are all from New Jersey. And based on that, was it? Three to five. Three to five. And I even argued that the plaintiff has not met its burden because there are other parties. You've got the trustee of the trust. You've got the general partner of WFP2, which was the limited partner. All of these other parties have not been dealt with. Then it doesn't matter, does it? If as a legal matter we disagree with you, then all those other entities or individuals are irrelevant, right? No. If the court is, in effect, going to consider reversing Emerald and making this new rule, then even then the court cannot reverse Judge Goldberg because the plaintiff bears the burden to demonstrate complete diversity. Let me put it to you again. I'm not talking about this specific record and what they have or haven't shown with respect to trust documents that aren't in evidence. I'm asking as a legal matter, if we disagree with your position, then these other entities you're describing are irrelevant, right? Because we would be looking only to the citizenship of the trustee, not to any beneficiary, correct? Because GB Forefront is a limited partnership, you have to look at the general partner and the limited partner, and you have to look at the tree going all the way down. Because even if you look at the trustee, for the trusts and not the beneficiaries, you still have the other layers that have to be considered. The trusts, you have to look at the citizenship of the trustee. You don't start penetrating down through the layers and asking who the lower levels are. Isn't that right? I thought that was common ground, that we were at a fork in the road. If you look at Americold in one way, you look at it and you say, hmm, well that says there's a distinction between traditional and business trusts, and with traditional trusts, you don't look at the citizenship of the beneficiaries. If you look at Americold the way you're suggesting, it doesn't change the law. You still have to look at the beneficiaries. I thought that was the fork in the road. Am I wrong about that? That is a major fork in the road, but I still submit that the plaintiff never developed the record adequately to discuss. For example, the general partner of WFP2LP is a company called Wiener 2 General LLC. We all know that LLCs, you look at the numbers, that was never developed. So what I'm suggesting, Your Honor, is that this complicated question can easily be avoided, if the court was so inclined, by simply saying that the plaintiff has not developed the record adequately. So you think we ought to duck the big question? I'm sorry? You think we ought to duck the big question? I wouldn't say that. I think it's an interesting enough issue that, no, it shouldn't be ducked, but that's certainly reason to say that even if the plaintiff should not be allowed to go forward. Should there be a faulting of the plaintiff for a less than fully developed record when both parties litigated this case to the max for years without a peep about jurisdictional issues? Yes. And in the end, it was to avoid apparently living up to its own agreement that your party decided, hey, wait a second, there's a jurisdictional issue. Or is that a situation where it's better, fairer to say, look, this is a late-breaking development. Take it back. Develop the record. Why isn't that the better way to handle it, Mr. Feldman? The precedent from the Supreme Court has made it very clear that this issue can be raised at any time. It is not waivable. Not the point. The point is, what's the better, fairer way to handle it when both parties litigate this thing without a peep about jurisdictional problems until late, late in the game? Is it right to say, well, it wasn't developed. You lose. Or is it better to send it back and say, now develop your record. If you can't develop your record, you lose. I don't think that the equity is coming to play here. I think that the question of fairness is not something that the courts should be getting into. When the plaintiff has not met its burden, the courts continuously state that they do not have jurisdiction. For years the plaintiff didn't know that it had this burden to meet. Evidently. Mr. Kellner, haven't the parties crystallized this issue by indicating that the dispute here lies as to whether Mr. Wiesentauski, as a resident of New Jersey, and the three testamentary beneficiaries who are also residents of New Jersey, whether those commonality of citizenship are the issues that prevent complete diversity? Is there anything else? That was the way that the issue came to be framed by virtue of the plaintiff having submitted to the lower court a stipulation on those facts. I read everything that's been submitted. I didn't see a suggestion that there was another potential jurisdictional issue that remains to be decided. Am I wrong? I could very well be wrong, but I didn't see that. I think the answer to your question, Judge Marinari, is that the plaintiff never came forward with any evidence for us to figure it out. We just couldn't intelligently determine whether there were additional issues on the jurisdictional question. In fact, I did raise that at oral argument, and because of the stipulation that the plaintiff had offered, the judge said, well, I think that we can decide this case because, Mr. Fellner, if you're right, the case is over and it will be dismissed. Let me just say one last word. There's been some discussion about the word remand because the plaintiff has not adequately developed the record, and I would submit that remand is not the way to go here. And the reason is that all the cases that I have read where the lower court accepts jurisdiction and it's later determined that that should not have been done and there are further questions as to jurisdiction, the case is remanded back to the district court. But when the plaintiff utterly fails to meet its burden, and then it's dismissed as here for it to go up on appeal and say, well, you didn't meet your burden, you should have, and now we're going to give you a second chance, it really eviscerates the whole rule that you need to meet your burden. So it sounds unfair to you? I think it's a waste of resources. So it's not an appeal to fairness? It's an appeal to resources, judicial economy. All right. Thank you. All right, thank you, Mr. Fellner. Thank you. I do want to address a couple of issues, but since we're on the topic of fairness, I want to speak a minute about the procedural history that led up to the hearing of bring whatever you can to show jurisdiction when the jurisdiction issue arose. There was a default. The owner of the companies here, the defending companies, entered into a settlement agreement, paid on the settlement agreement two payments, $350,000 on a $3.5 million settlement agreement, and then defaulted because of the technicality that they found later on of subject matter jurisdiction. And I understand it can be raised at any time. Yeah, but when you say technicality, you make air quotes. That's a pretty gigantic technicality, right? For us, that's not your average technicality. Your Honor, in legal jurisprudence, which has been hundreds of years, I would agree with you. With this particular case, I want to discuss it in fairness because in the fairness world, okay, of subject matter jurisdiction, the case was litigated for five years. The parties came to an agreement on the lines, okay, and then they defaulted based upon subject matter jurisdiction. And we had one day to come to the court, and it was a prior counsel, it wasn't me, and show what you think is jurisdiction. It was motion hearings to enforce a settlement agreement to enter a consent judgment, and then counsel just got involved, and he moved to vacate the judgment and effectively eviscerate the settlement agreement. So that's the context of subject matter jurisdictions. So if there's any fairness to be had here, the plaintiff, it wasn't fair to the plaintiff because they weren't able to develop the record with respect to jurisdiction, and that's the problem. So when you say, Mr. – when counsel says that Mr. Mositowski was a resident of New Jersey and the court said, well, bring anything you can to show jurisdiction, we had nothing because we didn't have research, we didn't have a deposition, we didn't have a driver's license. We had nothing to show that he was other than – that he was a person. We had none of this. He wasn't even an individual defendant in the litigation. So talking about fairness, I needed to get that out. The other thing is, it's clear in the record that the Pennsylvania trustee, the trustee for the trust in Pennsylvania was Walter Wiener, Warren Wiener, who is a resident of Pennsylvania, and that's in the record for this panel. And I have it in the appendix. But that is clear. In fact, counsel even agreed and I think put forward some type of tax documents and filings with the state that show Mr. Wiener. And they are part of the appendix. So that's clear. I don't think there's an issue there. The other thing is, when we're talking about the testamentary trust, there is no issue, I don't believe, that the Pennsylvania statute – Hold on, let me get you to the exterior to address one thing I heard Mr. Fellner say, which is, and maybe you just did and I'm missing the connection, that we're still going to have to go down through certain layers, even if we accept the plaintiff's view of the law. And maybe I misunderstood his argument, but I thought if we accepted the plaintiff's view of the law, that you deal with the trustee's citizenship and that's it. Is that accurate or not? I agree, Your Honor. I agree. I think it creates a bright line test when you're dealing with different types of trust. The analysis would clearly be what type of trust this is and then subject matter jurisdiction and citizenship would be automatically determined. Is this a matter of federal common law? Is this a matter of state law? How are we – that's inartfully framed. In the Navarro case, there was a dispute between the dissent and the majority with Justice Blackman saying, wait a second, it looks like you're creating federal common law here when usually we look to state law to determine whether entities exist or have citizenship. What are we to do here? Are we to say, as Mr. Felner apparently is encouraging us, that under Pennsylvania law it's specific enough that this is a separate entity, that therefore we're bound by that and need to look down at the beneficiaries? Or are we in a circumstance where we can say, look, we're deciding this is a matter of federal law. We're not going to be tied down by the labels that the states might use in their statutes. Do you understand what I'm trying to get at? I believe so, Your Honor. If I can clarify, I think what you're asking is whether or not the decision is going to sound in state law or sound more like federal common law. It's clearly going to be influenced by state law. I think it's going to be exactly what happened in Mericold in terms of looking to the state statute to see what type of trust. I think it's clear here that this is not a business trust, and I think the court has a unique opportunity to amplify and clarify in the face of Mericold what the difference between a business trust and a testamentary trust is, especially in this case where we clearly have in Mericold a real estate investment trust, which is a business trust, and a true testamentary trust, a grandfather setting forth a trust for his grandchildren being not a traditional trust. Those are the two separate trusts that we're talking about today. I think that's a matter of federal law in determining the citizenship of whether or not there is subject matter jurisdiction. I thank the panel. Thank you. All right. Thank you very much, Mr. Nussefora. Mr. Fellner, we've got the case under advice. We appreciate your arguments today. Thank you.